**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 16-CR-164** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **BRIAN G. ACOSTA,** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

Defendant Brian G. Acosta ("Acosta") moves to suppress physical evidence and statements that police obtained pursuant to his October 23, 2015 arrest. Acosta argues that evidence from said arrest should be excluded because the officers who arrested him lacked probable cause. (<u>See</u> Doc. 34). The court will deny Acosta's motion.

## I.   <u>Factual Background</u>

The following findings are based primarily upon the court's assessment of the credibility of testimonial evidence offered during the evidentiary hearing held on January 11, 2017. (<u>See</u> Doc. 42).

On October 23, 2015, Harrisburg Bureau of Police Officers Jon Fustine ("Officer Fustine") and Michael Rudy ("Officer Rudy") were on duty with the Street Crimes Unit in Harrisburg, Pennsylvania. (<u>Id.</u> at 11:15-25, 33:11-21). Both officers were in unmarked vehicles with their respective partners when they received a call at approximately 6:00 p.m. from dispatch stating that there was a white male with a black shirt and camouflage hat with a gun in the area of 20th Street and Kensington Street. (<u>Id.</u> at 12:9-13:12, 33:22-34:10). Officer Fustine drove past the specified area

and noticed a man matching the dispatcher's description, who Officer Fustine later identified as Acosta.  (Id. at 13:22-14:5, 15:6-9).  Officer Fustine and his partner parked and exited their vehicle to follow Acosta on foot down an alleyway.  (Id. at 14:15-15:14).  Officer Rudy received a radio transmission from Officer Fustine describing Acosta's location.  (Id. at 35:2-9).  Officer Rudy located and followed Acosta in his vehicle down an alleyway.  (Id. at 35:5-23).

Acosta testified that he was walking home around 6:00 p.m. on October 23, 2015.  (Id. at 4:4-24).  He stated that he encountered Officer Rudy in his unmarked vehicle and that he felt threatened by the vehicle with tinted windows but did not see police.  (Id. at 5:2-19, 6:1-10).  Contrary to Acosta's account, Officer Fustine testified that he was following Acosta on foot and his radio went off, causing Acosta to look behind him.  (Id. at 15:12-18).  Acosta began to run.  (Id. at 6:1-13, 15:15-22, 37:4-10).  Officer Rudy testified that the windshield of his vehicle was not tinted, he and his partner were both wearing uniforms with "POLICE" printed in gold lettering across their chests, and Acosta was only feet away from Officer Rudy's vehicle.  (Id. at 43:15-46:4).  Given Acosta's testimony that he saw the vehicle when it pulled up beside him, (id. at 5:4-15, 6:8-10), the court credits the officers' account, to wit:  when Acosta saw and heard the police, he began to run.  (Id. at 37:3-6).

Acosta held his right side as he ran.  (Id. at 16:2-13, 37:11-14).  Officer Fustine pursued him on foot while Officer Rudy pursued him in his vehicle.  (Id. at 16:2-3, 37:8-16).  Officer Fustine lost sight of Acosta when he turned onto Kensington Street from the alleyway, but Officer Rudy exited his vehicle and pursued Acosta as he ran into a yard on Kensington Street.  (Id. at 16:20-23, 37:17-38:1).  Officer Rudy

followed Acosta through the backyard of 2044 Kensington Street and lost sight of him when he rounded a corner. (Id. at 37:21-39:16). Officer Fustine saw Acosta emerge from the backyard and chased him until he and another officer were able to detain him a few blocks away. (Id. at 17:1-22).

Officer Rudy was not involved in the actual apprehension of Acosta; instead, he checked Acosta's flight path for evidence. (Id. at 39:17-40:2). Officer Rudy found a firearm lying on the ground in the backyard of 2044 Kensington Street. (Id. at 39:24-40:2). Officer Fustine ordered an officer to track Acosta's flight path with a canine, who also located the firearm. (Id. at 17:24-18:15, 40:7-13). Officer Fustine recovered the firearm, which was loaded with live rounds. (Id. at 18:16-20, 40:5-13). Officers then placed Acosta under arrest and searched him, finding a black ski mask on his person. (Id. at 19:12-24).

II.   **Procedural History**

On June 22, 2016, a federal grand jury returned a one-count indictment against Acosta. (Doc. 1). A superseding indictment returned on July 20, 2016 charges Acosta with being a felon in possession of a firearm on October 23, 2015 (Count 2) and December 27, 2015 (Count 1) in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). (Doc. 20). Acosta pled not guilty to both counts. (Doc. 27). Jury selection and trial are currently scheduled to begin at 9:30 a.m. on March 6, 2017. (Doc. 44). On December 12, 2016, Acosta filed the instant motion to suppress, accompanied by a supporting brief. (Docs. 34, 35). On December 19, 2016, the United States filed a brief in opposition. (Doc. 37). The court convened a hearing on the motion on January 11, 2017. (See Doc. 42). At the court's direction, the

parties filed supplemental briefs on February 3, 2017. (Docs. 45, 46). The motion is fully briefed and ripe for disposition.

## III.   <u>Discussion</u>

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. <u>See</u> U.S. Const. Amend. IV; <u>Horton v. California</u>, 496 U.S. 128, 133 (1990). Generally, a seizure is reasonable only if effectuated with a warrant supported by probable cause. <u>See</u> <u>United States v. Robertson</u>, 305 F.3d 164, 167 (3d Cir. 2002) (citing <u>Katz v. United States</u>, 389 U.S. 347, 356-57 (1967)). The government bears the burden of demonstrating that an exception to the Fourth Amendment's warrant requirement existed at the time of a seizure. <u>See</u> <u>U.S. v. Johnson</u>, 63 F. 3d 242, 245 (3d Cir. 1995).

The Supreme Court has long recognized that a warrantless arrest of an individual in a public place, when supported by probable cause, does not violate the Fourth Amendment. <u>See</u> <u>United States v. Watson</u>, 423 U.S. 411, 423-24 (1976). Probable cause is an amorphous concept. <u>Ornelas v. United States</u>, 517 U.S. 690, 695-96 (1996). It is "not readily, or even usefully, reduced to a neat set of legal rules." <u>Id.</u> (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983)). Its existence must be determined from the view of the officer on the street, not the judge in the courtroom. <u>United States v. Sokolow</u>, 490 U.S. 1, 7-8 (1989); <u>see</u> <u>also</u> <u>United States v. Cortez</u>, 449 U.S. 411, 418 (1981). Probable cause exists when circumstances within a police officer's knowledge are sufficient for a prudent person to conclude that a person has been or is committing an offense. <u>Beck v. Ohio</u>, 379 U.S. 89, 91

(1964).  Mere suspicion is insufficient, but evidence beyond a reasonable doubt is not required.  Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).

Flight upon appearance of police alone cannot "elevate reasonable suspicion to detain and investigate into the probable cause required for an arrest," but flight coupled with other indications of wrongdoing may support probable cause.  United States v. Navedo, 694 F.3d 463, 472 (3d Cir. 2012).  An anonymous tip concerning a person carrying a gun lacks "indicia of reliability" and does not support reasonable suspicion without corroboration.  Robertson, 305 F.3d at 175 (citing Florida v. J.L., 529 U.S. 266, 274 (2000)).  Several factors may corroborate an anonymous tip, to wit: presence in a high crime area, presence late at night, nervous behavior or flight, or conduct that conforms to an officer's "specialized knowledge of criminal activity." United States v. Brown, 448 F.3d 239, 251 (3d Cir. 2006).  Other factors include "geographical and temporal proximity of the stop to the scene of the alleged crime," and number of other individuals in the area.  United States v. Goodrich, 450 F.3d 552, 561 (3d Cir. 2006).  The totality of the circumstances must be considered, as no single factor is dispositive.  See Ornelas, 517 U.S. at 698; Cortez, 449 U.S. at 417.

Officer Fustine and Officer Rudy had reasonable suspicion to believe that Acosta was in violation of the law when he fled from police.[1]  Acosta is correct in noting that, in isolation, the anonymous tip *sub judice* was not sufficient for

---

[1] In its analysis, the court employs the "collective knowledge doctrine," under which the knowledge of one law enforcement officer may be imputed to another when the officers are conducting a joint endeavor.  See United States v. Whitfield, 634 F.3d 741, 745-46 (3d Cir. 2010); United States v. Belle, 593 F.2d 487, 497 n.15 (3d Cir. 1979).

reasonable suspicion. See Robertson, 305 F.3d at 175; (Doc. 45 at 3-4). Neither was Acosta's flight independently sufficient to create reasonable suspicion. See Navedo, 694 F.3d at 472; (Doc. 45 at 3-4). But considering the totality of the circumstances presented to Officers Fustine and Rudy, reasonable suspicion existed to stop Acosta. See Cortez, 449 U.S. at 417. The officers were employed in a Street Crimes Unit, working within a high-crime area. (Doc. 42 at 11:24-12:8, 33:16); see Brown, 448 F.3d at 251. Acosta matched the description from the anonymous tip, (id. at 14:1-5, 35:2-6), and was geographically and temporally in the correct location. (Id. at 12:23-14:5, 34:5-35:6); see Goodrich, 450 F.3d at 561. No other individuals were identified anywhere on the street at the time the officers located Acosta. (Id. at 20:23-21:3); see Goodrich, 450 F.3d at 561. Acosta held his side as he ran, a key fact which Officer Fustine considered suspicious and indicative of concealment. (Id. at 16:2-13). Given Acosta's flight when he saw the police, as noted *supra*, see Brown, 448 F.3d at 251, the facts coalesce to form grounds for reasonable suspicion.

Officer Fustine's reasonable suspicion justified his stop of Acosta, and when Officer Rudy located Acosta's gun, suspicion elevated to probable cause for arrest. The existence of a discarded gun is sufficient for a prudent person to conclude that Acosta had committed a crime. See Beck, 379 U.S. at 91. The court finds that the gun and the circumstances surrounding Acosta's arrest *in toto* support probable cause. See Navedo, 694 F.3d at 472. Evidence recovered pursuant to Acosta's arrest and any statements he made thereto are consequently admissible.

## IV.    **<u>Conclusion</u>**

The court will deny Acosta's motion (Doc. 34) to suppress evidence.  An

appropriate order shall issue.


<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:     February 16, 2017